## Case No. 13,360.

STEPANOVIT v. GILLIBRAND AND FOUR THOUSAND NINE HUNDRED AND TWENTY-TWO BUSHELS OF WHEAT.

[N. Y. Times, March 30, 1864.]

District Court, D. Connecticut. 1864.

SHIPPING — ABANDONMENT OF CHARTER PARTY — LIEN FOR FREIGHT AND DEMURRAGE.

[1. A lien for freight, dead freight, and demurrage, expressly reserved by the charter party, attaches the moment cargo is put on board under a bill of lading made subject to the charter party.]

[2. Refusal of a charterer to fill the vessel up after furnishing a partial cargo does not relieve the master of the obligation to carry forward the cargo he has, if the same is sufficient security for the full freight; but if it is in bad condition, and depreciating so rapidly as in all

probability to become insufficient as security, he is not bound to go forward with it, but may discharge it, and then enforce against it his lien for the freight and demurrage due under the charter party.]

[3. Where a charterer abandons his contract to load a vessel with wheat and flour, the measure of the dead freight to be recovered is the difference between the net freight for a full cargo of wheat and flour, and what would have been netted by any other reasonable cargo which by due diligence could have been obtained.]

[4. Under such circumstances demurrage is due the ship from the expiration of the lay days until she could, with reasonable diligence, have procured other employment.]

This was a libel upon a charter party filed by Martin Stepanovit, Jr., the master of the Austrian ship Imperatrice Elizabetta, against Edmund Gillibrand and 4,922 bushels of wheat. The vessel being in this port, the master, on the 9th of September, 1863, chartered her to Gillibrand by a written charter party to carry a full cargo of wheat and flour to London. By a clause in the charter the libelant was to have a lien on the cargo for freight, dead freight and demurrage. Thirty-five lay days were allowed for loading and discharging, to begin on September 11th. The wheat in question was shipped on board the vessel by Arkell, Tufts & Co., under a bill of lading stating that it was to be subject to the provisions of the charter party. Gillibrand refused to furnish any more cargo to the vessel. The wheat on board was found to be badly infected with weevil, by which it was heating and sweating. The first intimation of its condition came from the shippers. The wheat was then examined by experts and by the port wardens, and it was found to be entirely unfit to go forward on the voyage, and a sale was recommended for the benefit of all concerned. The wheat was discharged from the vessel and the libelant filed this libel against it to recover the sum due from Gillibrand under the charter and to enforce his lien. By an order of the court in the cause the wheat was sold, and the proceeds paid into the registry of the court.

Larocque & Barlow, for libelant.
Sherman & Benedict, for claimant.

HELD BY THE COURT (SHIPMAN, District Judge): That the lien on the goods created by the charter and recognized in the bill of lading attached the moment the wheat was laden on board the ship. That the obligation rested on the master, in spite of Gillibrand's refusal to fill the vessel up, to carry the wheat forward and deliver it at the port of destination, provided, and provided only, he had cargo enough on board to secure his freight for a full load. 3 Kent, Comm. (9th Ed.) p. 280. That the master was not bound to attempt to earn freight by carrying forward an article that in all probability would be so depreciated in value at the end of the voyage as to be inadequate to satisfy the claims of the ship under the charter. The

shipper, having laden his goods under the stipulations of the charter, is not only bound by them, but is responsible for the condition of the goods. That the admission in the bill of lading as to the good condition of the wheat is not conclusive between the parties. That the wheat is therefore responsible for the libelant's claim. As no freight was carried, the decree must be for dead freight and demurrage. The amount is to be measured by the difference between what a full cargo of wheat and flour would have netted under the charter and what would have been netted by any other reasonable freight which the master could have obtained, with due diligence, after the charterer had abandoned his contract. And as to demurrage, the ship should recover from the expiration of the lay days till she could have, with diligence, obtained other employment.